UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAYED BASHIR RAHIMI,<br><br>        Plaintiff,<br><br>    v.<br><br>SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY,<br><br>        Defendant. | Case No.16-cv-02576-JST<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 32 |

Before the Court is Defendant City and County of San Francisco's Motion for Summary Judgment. ECF No. 32.[1] The Court will grant the motion.[2]

## I.    REQUEST FOR JUDICIAL NOTICE

In support of its motion for summary judgment, Defendant requests that the Court take judicial notice of two state court orders in Sayed Bashir Rahimi vs. San Francisco Taxi Commission, et al., and sections 1101 to 1105 of the San Francisco Transportation Code, Division II, which govern the issuance of Taxi permits and medallions. ECF No. 33. The Court grants the request. See Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001) ("[U]nder Fed. R. Evid. 201, a court may take judicial notice of matters of public record.") (internal quotations and citation omitted).

## II.    BACKGROUND

Plaintiff Sayed Bashir Rahimi was the owner and operator of a taxi cab company in San Francisco. ECF No. 1 ("Compl.") at 4. To operate a taxi in San Francisco, drivers must obtain an

---

[1] Defendant was erroneously sued as the San Francisco Municipal Transportation Agency ("SFMTA").
[2] The Defendant's motion is unopposed and is suitable for disposition without oral argument. Civ. L.R. 7-1(b). The hearing scheduled for September 12, 2017 is vacated.

A-Card from the San Francisco Municipal Transportation Agency ("SFMTA") and a medallion, which allows an A-Card permit holder to operate a specific vehicle as a taxi. ECF No. 33-3. Each applicant for an A-Card permit must:

> (1) Provide his or her fingerprints;
> (2) Take and pass a written examination;[3]
> (3) Demonstrate that he or she has successfully completed a Driver Training Course;
> (4) Provide photographs of the applicant, taken no more than 12 months prior to the time of application;
> (5) Submit to a drug test as required by the Taxi Driver Drug and Alcohol Testing Policy;
> (6) Sign a written consent to allow the SFMTA to obtain information regarding the applicant's drug and alcohol testing history for the previous two years; and
> (7) Disclose whether applicant has, within the prior two years, ever failed a pre-employment drug or alcohol test that resulted in the applicant not getting hired.

ECF No. 33-3. Applicants must also "[h]ave a current California driver's license" and "speak, read and write the English language." Id. SFMTA offers the following justification for this requirement:

> Having a fundamental ability to read, write and speak English is an essential eligibility requirement for individuals who wish to become taxi drivers in San Francisco because most customers indicate their destination verbally in English. If a taxi customer is unable to speak, they must have the option of communicating with their taxi driver in writing. Additionally, it is essential that drivers are able to read street signs, and that they are able to read and comprehend all laws pertaining to operating a taxi in San Francisco and California, in general.

ECF No. 32-5 at ¶ 5.

Plaintiff first obtained an A-Card permit and medallion in 1998. Id. 32-5 ¶ 5; ECF No. 32-7 at 2. During his deposition, Plaintiff claimed that he only passed the written examination because he cheated. ECF No. 32-3 at 6) ("Q: So when you took the test to become a taxicab driver in San Francisco, someone helped you cheat on that test? A: Yes."). Similarly, although Plaintiff had a driver's license when he applied for his A-Card, he also admitted to cheating on the written

---

[3] The written test is a 50-word essay. ECF No. 32-5 at ¶ 6-8. SFMTA imposes no time frame requirement and no spelling or grammar requirements, and applicants may "take the initial written examination as many times as they wish." Id.

2

United States District Court
Northern District of California

driving test. ECF No. 32-3 at 3 ("Q: Did you cheat on your driving test, written driving test, in order to get your driver's license? A: Yes. Yes.").

In March of 2008, the San Francisco Taxi Commission ("the Commission") filed an administrative complaint against Plaintiff, "alleging that he had repeatedly violated the full-time driving requirement, had sexually harassed female passengers and police officers, had made false statements, and had committed perjury." ECF No. 33-2 at 9. The Hearing Officer recommended that Plaintiff's medallion and A-card be revoked, and the Commission accepted the Hearing Officer's recommendations. Id. These revocations were upheld by the Board of Appeals, id. at 10, the San Francisco Superior Court on November 24, 2010 after Plaintiff filed two writs of mandamus, id., and by the California Court of Appeals on October 7, 2011, id. at 14.

In 2016, Plaintiff attempted to renew his A-Card permit. ECF No. 32-3 at 10. SFMTA staff informed Plaintiff that he would have to complete a written test and fill out an application, among other things. ECF No. 32-3 at 13. The written test asked Plaintiff to write an essay of at least fifty words in response to the prompt: "If you could take a vacation. where would you go? And why?" ECF No. 32-3 at 30. Plaintiff wrote a single sentence in response. Id. at 31. When the SFMTA representative told Plaintiff he had failed the exam, Plaintiff explained that he could not pass the written test because he is dyslexic, but he provided no medical documentation confirming his dyslexia diagnosis. Id. at 14. Plaintiff stated in his deposition that there was no need for him to take the written test because he is an experienced cab driver with over thirty years of experience. Id. Defendant states that Plaintiff never provided SFMTA with proof that he had completed any of the other requirements necessary to obtain his A-Card permit and medallion ECF No. 32-5 ¶ 14.

On May 16, 2016, Plaintiff filed this suit pro se against the City and County of San Francisco. ECF No. 1. Plaintiff alleges that 1) Defendant violated Title VII of the Civil Rights Act of 1964 when it revoked his A-Card and taxi medallion, and 2) Defendant violated Title II of the Americans with Disabilities Act ("ADA") by requiring him to take a written exam when Plaintiff sought to renew his A-Card. ECF No. 1 at 4. Defendant answered the Complaint on July 11, 2016. ECF No. 9. On July 14, 2017, Defendant moved for summary judgment on both of

3

Plaintiff's claims. ECF No. 32. Plaintiff did not file an opposition to the motion.[4]

## III. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). A fact is "material" if the fact may affect the outcome of the case. Id. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claim, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists. Id. "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and

---

[4] The Court does not construe Plaintiff's failure to file an opposition brief as a concession, and will assess the motion to dismiss on the merits. See Narog v. Certegy Check Servs., Inc., 759 F. Supp. 2d 1189, 1193 (N.D. Cal. 2011) (addressing motion to dismiss on the merits in part because of "the Ninth Circuit's unequivocal pronouncement that a court may not grant a motion for summary judgment merely because the nonmoving party failed to file opposition papers, Martinez v. Stanford, 323 F.3d 1178, 1183 (9th Cir. 2003)").

4

internal quotation marks omitted). If the non-moving party fails to make this showing, the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## IV. DISCUSSION

### A. Civil Rights Act Claim

Defendant moves for summary judgment on Plaintiff's Title VI claim, 42 U.S.C. § 2000d, arguing that it is barred by the two-year statute of limitations. ECF No. 32 at 11-12. "[C]laims brought under 42 U.S.C. § 2000d are governed by the same state limitations period applicable to claims brought under § 1983." Taylor v. Regents of Univ. of California, 993 F.2d 710, 712 (9th Cir. 1993). The statute of limitations for § 1983 actions brought in California is two years. Canatella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007).

Plaintiff bases his Title VI claim on SFMTA's revocation of his taxi medallion and A-Card. ECF No. 1 at 4 ("The defendant, the San Francisco Municipal Transportation Agency had violated Title VI of the Civil Rights Act of 1964, by asking the court to go beyond the framework of the case and to extra-judicially render a verdict resulting in suspension/removal of Plaintiff's A-card."). Plaintiff's A-Card and medallion were originally revoked in 2008. ECF No. 33-2 at 9. The revocations were upheld by the Board of Appeals, id. at 10, the San Francisco Superior Court on November 24, 2010 after Plaintiff filed two writs of mandamus, id., and by the California Court of Appeals on October 7, 2011, id. at 14. Even assuming October 7, 2011 triggered the running of the statute of limitations, Plaintiff's Complaint, filed more than two years later in 2016, is untimely. Because Plaintiff did not respond to the motion for summary judgment, the Court has been given no grounds to toll the statute of limitations. Accordingly, the Court grants the motion as to Plaintiff's Title VI claim.[5]

### B. ADA Claim

Next, Defendant argues that Plaintiff's ADA claim fails on the merits. This claim is based not on the 2008 revocation, but on SFMTA's refusal to accommodate Plaintiff's dyslexia by waiving the written exam requirement. ECF No. 1 at 5 ("Finally in the month of April, 2016, the

---

[5] The Court does not reach Defendant's argument that Plaintiff's Title VI claim fails on the merits. ECF No. 32 at 12-13.

5

plaintiff was allowed to take the test,[sic] that would allow him to get his A-card reinstated. However, the plaintiff is dyslexic and the defendant had not offered, or is willing to offer the necessary accommodations for the plaintiff to take the test. Therefore, the defendant willfully violated Title II of the Americans with Disabilities Act of 1990. According[] to this act the defendant is required to make programs accessible to individuals with disabilities; such as dyslexia.").

Claims of disability discrimination under Title II have four elements:

> (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). Defendant argues that Plaintiff's Title II claim fails for three reasons, only two of which the Court need discuss.

First, Defendant claims that Plaintiff did not provide "reasonable proof of his disability." ECF No. 32 at 14. "A public agency may require reasonable evidence of a disability before providing accommodations."[6] Vinson v. Thomas, 288 F.3d 1145, 1153 (9th Cir. 2002). The Ninth Circuit has rejected a disability discrimination claim, for example, where the plaintiff "fail[ed] to provide updated certification that he ha[d] a qualifying disability." Weinreich v. Los Angeles Cty. Metro. Transp. Auth., 114 F.3d 976, 979 (9th Cir. 1997). A plaintiff need not provide a "medical professional's diagnosis of the asserted disability," but can be required to provide evidence "supporting a claim of disability [] which would satisfy a reasonable expert in the field." Vinson, 288 F.3d at 1153.

Here, Plaintiff admitted in his deposition that he did not provide any documentation of his dyslexia to the written exam. ECF No. 32-3 at 14. Defendant offers no evidence, however, that it

---

[6] "Although Title II of the ADA uses the term 'reasonable modification' rather than "reasonable accommodation," these terms do not differ in the standards they create." Wong v. Regents of Univ. of California, 192 F.3d 807, 816 (9th Cir. 1999), as amended (Nov. 19, 1999).

6

ever asked for any such documentation. In that sense, this case is distinguishable from Weinreich, where the plaintiff failed to comply with a "new rule requiring disabled Program participants to provide updated medical information every three years recertifying that they are disabled" before obtaining reduced bus fares. Weinreich, 114 F.3d at 978. The Court declines to extend the doctrine set forth in Vinson and Weinreich to a situation where Defendant does not even claim to have "required evidence" of Plaintiff's disability when he asked for the accommodation.

Next, Defendant argues that Plaintiff cannot meet his burden on the second element of a Title II claim – that he "is otherwise qualified" to obtain an A-Card and taxi medallion. ECF No. 32 at 15. According to Defendant, Plaintiff has provided no evidence that he fulfilled any of the other requirements, listed in San Francisco's Transportation Code, which must be met in order to obtain an A-Card or taxi medallion. ECF No. 32-5 ¶ 14. Plaintiff did not oppose the motion for summary judgment and therefore provided no evidence to rebut that assertion.[7] Accordingly, the Court grants summary judgment for Defendant on this claim, too.[8]

## CONCLUSION

The Court grants Defendant's motion for summary judgment as to both of Plaintiff's claims.

IT IS SO ORDERED.

Dated: August 10, 2017

_____
JON S. TIGAR
United States District Judge

---

[7] Defendant also argues that Plaintiff does not have the required "valid driver's license" because he admitted to cheating in order to obtain his license. ECF No. 32 at 15; ECF No. 32-3 at 3 ("Q: Did you cheat on your driving test, written driving test, in order to get your driver's license? A: Yes. Yes."). But that would require the Court to conclude as a matter of law that Plaintiff's conduct rendered his license invalid. The Court declines to reach that question.

[8] The Court does not reach Defendant's third argument that "Plaintiff's requested modification is not reasonable because it would fundamentally alter the taxi licensing process." ECF No. 32 at 17.

7